May it please the Court, my name is Katherine Heekin and I represent the appellant Kristen Samuelson. We are asking this Court to reverse the judgment of the trial court because we have sufficiently pleaded the Title IX claim and it was timely filed per the discovery rule. Today I will address two points in support of our position. For the rest, we rely on our brief. I request three minutes for rebuttal. Point number one, in sexual harassment cases, it is the deliberate failure to curtail known harassment rather than the harassment itself that constitutes the intentional Title IX violation. Accordingly, the district judge should have focused on Samuelson's allegations of OSU's deliberate indifference to knowledge of prior sexual violence, not the rape itself. The decision of the district court judge essentially fell for the empty chair defense. Where we get, where the focus should be is on the way in which the courts have looked at actual knowledge. That's one of the three elements for the Title IX claim. You have to establish actual knowledge that the funding recipient has, that they were deliberately indifferent to the harassment, and then that the harassment was so severe, pervasive, and objectively offensive that it bars the victim's access to the educational opportunity or benefit. There were two Supreme Court cases and one Tenth Circuit case that provides the legal framework in this setting. The first of those was the Gebser case decided in 1989. That was a teacher-student sexual, teacher-student situation in which the teacher and student had been having sexual intercourse. The focus there was on whether the school had actual knowledge. The court stated that the liability is for the institution's own decisions to remain idle in the face of known harassment. In that situation, the court distinguished between instances in which there's an official policy versus instances in which you need to have actual knowledge. There they said that, consequently, in cases like this one that do not involve official policy, we hold that a damages remedy will not lie unless an official who has at minimum his authority to address the alleged discrimination and to institute corrective measures has actual knowledge of the discrimination and fails adequately to respond. You know, I've read your briefs quite carefully, and I'm still a little confused. Maybe you can help me out. And that is precisely what we're talking about here, because I understand that she's not claiming that the handling of her report or the actual event is the injury here, but that she's talking about a follow-on event that as of in 2000 she was deprived of her educational opportunities because she didn't have the knowledge of what her claim is. Yes, Your Honor. And in that instance we focus on two things. She reports the rape to the university, and that is focused on the harm by the rapist. What doesn't happen is any support from the university to help her stay in the system, dealing with the effects of the rape. Okay. And I understand that. And, you know, from the record it does not appear that the university acquitted itself very well here at all. But in the statute of limitations context, she certainly knew as of that point, when she found herself unable to continue with school, that the university, in her view, wasn't doing anything to help her. So why isn't the statute run on that aspect of the claim? The allegations in paragraphs 10 and 11 of the complaint that are the focus on how she addresses how she's responded to by the sexual assault counselor, the focus on that is dealing with the harm caused by the rapist. Right. She knows about that harm. What she doesn't know is that the institution had knowledge of a prior rape and did nothing to create new policies, measures, and ways of assisting victims of sexual assault that would have allowed her to stay in school. That's okay. So I just want to unpack that a little bit, because whether they had notice of the, well, they knew that there'd been this other event and it's later determined that the person is the cousin, is that correct? Yes. But as of the moment, whether they had prior knowledge or not, their obligation to assist her then does go back to the nature of the counseling and the nature of the follow-on help. It doesn't really hinge on the fact that they also knew about another event. That's where I'm having trouble making the connections, and maybe you can help me on that. Right. The legal analysis that we look at is not only did she have knowledge of the critical facts of injury, but who was responsible for the injury. And here we assert two different kinds of injury. One is injury from the rapist. The other is injury from being deprived of the benefits of her education because the institution had failed to develop corrective measures that would assist victims of rape to continue to be in school. Okay. Let's stop right there. So obviously the unspeakable harm caused by the rapist, my understanding in reading the papers is she's disclaiming that really as the basis of her harm. And she's not holding the university for that. She's trying to hold them liable for depriving her of her education. Is that right? Absolutely. Okay. But she knew immediately, I mean, they either did or didn't have processes in place, and they either could or could not have obviously jumped into gear and begun to provide counseling procedures and that sort of thing. But she knew that at that moment. I mean, she knew that in the follow-on period after the rape. That's not something that's hinged to the fact that they also had another event, is it? Well, I think the danger we get into in this type of a situation is that we're at the pleading stage. And there are allegations in paragraphs 10 and 11 related to how they dealt with the rape. We have other allegations in paragraph... But I thought she disclaimed, this is where I'm getting, I just want to be clear, because the briefs were pretty clear that that's not, she's not faulting the university for the counseling and the reaction. Is that true? The focus of what happened with the rape and how that was reported goes to the actual knowledge element of the Title IX claim. The harm that we're focused on is associated with being deprived of the educational benefit. Okay. So that's really, I mean, okay. I just wanted to clarify that. So what we're talking about is she claims that the university deprived her of this educational opportunities because she couldn't continue. Because they hadn't taken corrective measures that would have facilitated her ability to stay in the system after having suffered the consequences of a rape. Okay. But the corrective measures they would have taken would be taken at that moment, right? Either in 2000 or shortly before or after, right? I mean, I'm still really perplexed about the link to determining a potential identity of the rapist. Right. Off-campus situation. So that's where I'm having trouble with. And I still quite haven't heard it, and I want to make sure I understand your claim. Right. The corrective measures go to the deliberate indifference element. Those measures we talked about in paragraphs 15 and 26 of the complaint. So that's the second element that we've met with the pleading as a party that causes her harm. And that's what she doesn't know in 1999. What she knows is that she's been harmed by a rapist. What she doesn't know is that the university has also harmed her because they have failed to act on that prior knowledge of Brenda Tracy's rape and change the way they go about assisting victims. And so when she drops out of school, she's dropping out associated with the consequences of the rape, not associated with the failure of the university to do what they should have done because they had this prior knowledge. Well, I mean, the fact is, if the university had an obligation, they had it at that moment. I mean, they, unrelated to the other rape, they would have an obligation, it seems to me, to do the right thing to make it possible for their student to hopefully re-enroll and thrive in their environment. They had that duty at that moment, unrelated to the other event. Right. But that's going to the element of the Title IX claim, their actual knowledge, when did their obligation arise. It doesn't go to when the plaintiff discovers that she's been injured and who injured her. Well, did they — if there were no other event, they would still have that obligation. Wait a minute. When you say who injured her — Right. — the injury she's complaining about here is injury from the university. Correct. What difference does it make, you know, who injured her? I mean, I assume by that you mean who the rapist was. No, I'm focused on when did she discover who injured her and what the injury was. Well, when you say who injured her, you're speaking of the rapist. No. Who are you speaking of then, who injured her? I'm saying that we pleaded two distinct harms, one caused by the rapist and the other caused by the university. The harm caused by the university she didn't discover until 2014. Well, she knew it was a harm. I mean, she was suffering it all during that time. She knew there was harm. Correct. But you have to know, per the Bibo case, not only the critical facts of injury, but who caused those. The university caused them because they didn't do anything to help her out, she claims. Right. She's focused on dealing with the rape, not on the educational opportunity and being able to continue in that educational opportunity, as we pleaded it. If you look at how we pleaded it in 10 and 11 versus 14 and 22, this is a pleading issue, right? We've pleaded it. Now we're getting into a fact question and what kind of findings of fact could we make which goes to a different stage of the case. And for that reason, it should go back. You've got to know what a plaintiff knows and when they know it are fact questions as set out in the Bibo case. So that's, we're talking about a pleading here. I know that there's a desire to make a conclusion about what she knew and when she knew it and was it obvious or not. But as pleaded, her focus when she's talking with the university is on the rape, not on whether the university is going to have such difficulty. When does she figure out that she's having difficulty staying in school? Let me answer this question, Your Honor, and then I see that my time has come. She drops out of school and all the time that's associated with I've been raped, that's pleaded. When she becomes aware that the university had knowledge and failed to do what they should have done and therefore deprived her of opportunity to stay in school because they didn't provide those corrective measures wasn't until 2014 when she found out about the prior rape and that the university had done nothing as reported in the news accounts in 2014. Let me ask you to address another question of, I'll call it attenuation, with which I have some problems. It's your case that under Title IX the university is available for taking corrective action on matters that occur off campus and a rape committed by a non-student. So they have Title IX responsibilities in that factual setting? That's your case, isn't it? No, our focus is on when there's the official policy as sort of articulated in Simpson. And this kind of goes to the actual knowledge element. The violation is caused by an official policy which may be a policy of deliberate indifference. Indifference to what, though? To providing. Indifference to matters that happen off campus? No. In this situation we're talking about the Brenda Tracy rape. That preceded Ms. Samuelson's and because of that. But that's not what harmed her. That provides the actual knowledge piece and then the deliberate. No, no, no. But the question is what legal connection is there between a university's obligation under Title IX and the events that happen off campus involving non-students? The focus is not on the act of the rapist. Well, maybe it should be. Well, that's not how the law is, Your Honor, based on the Davis. What is the law on this, on the off-campus events as far as the university's Title IX obligation is concerned? What is the law? From the Davis case at page 629, it is the deliberate failure to curtail known harassment rather than the harassment itself. But they're speaking of known harassment on campus. That's what that case is speaking of. Right. And in this situation. Well, what about off campus? But the known harassment comes from Ms. Tracy's rape by two student athletes and two non-students. That didn't harass her. Ms. Tracy was raped, and that provides the prior knowledge, Your Honor, that is one of the elements. And from there, you look to whether the university was deliberately indifferent to that rape and failed to take corrective measures that would have protected any other students from experiencing a similar harm. Once the identity of the rapist was known, was there any lawsuit or other legal proceeding filed in connection with that? As alleged, Ms. Samuelson did not discover the identity. She knew a name. I understand. But she didn't discover the identity of the rapist until after the news accounts in 2014 that led her to make a connection to Mr. Carlisle. So she knew the name, meaning she knew the name of her rapist at the, more or less in the vicinity of the time? I would like to answer that question, but I would answer it in a way that's outside the pleadings, information that would come up in facts. How it's pleaded is she discovered that after the news accounts came out that one of Ms. Tracy's rapists was Chris Carlisle, she made a connection to Chris Carlisle's cousin as her rapist. I see. All right. Thank you. Thank you. May it please the Court, Counsel Bruce Campbell on behalf of the Appellate Oregon State University. This case presents the question whether a student can properly assert a claim under Title IX against the university for a sexual assault that was committed by a non-student in an off-campus location. And the question is governed by the Supreme Court's decisions in Davis and Gebser. And those cases hold quite clearly that an institution is liable only if it exercised substantial control over two things. First, the context in which the harassment occurred. And second, it has to exercise substantial control over the person who did the harassing. In this case, it's an extreme form of harassment in the form of rape. Under that controlling authority, the district court properly held and concluded that the Oregon State could not be held accountable for an assault that occurred off-campus by a non-student. Now, the court has expressed some confusion over... Off-campus non-sponsored event. Non-sponsored event. Off-campus non-sponsored event. It's not like the Colorado situation where you have a recruiting situation and you have a bunch of guys going to a place. Correct, Your Honor. In that case, that was the incident was sponsored, sanctioned, approved, and in fact... By the school. ...promoted by the school. This seems like it was a private party. This was a... I mean, there's nothing to tie it to the university whatsoever other than it occurred in an apartment in Corvallis adjacent to the university. But there is some... There's a real disconnect between what's alleged in the complaint and what's been argued on appeal, I think, and that's what the panel's struggling with. And I've struggled with it myself in trying to put this together. The complaint alleges that there was a... Ms. Samuelson was raped in 1999 by a non-student in an off-campus location. She was drugged and then taken to another apartment. It alleges that as a result of Oregon State's deliberate indifference in allowing a sexually violent culture, that she was subjected to extreme sexual harassment in the form of rape. And then it goes on to talk about how she was treated poorly by the university after she made her report. Now, on appeal, it's in the reply brief, Ms. Samuelson has completely disavowed any claim based on the post-assault treatment by Oregon State University. It's all tied to the pre-assault conduct. And that theory, though, still doesn't cure the defects in the Title IX complaint, namely, number one, there's a problem with the lack of substantial control, and number two, there's a statute of limitations issue. And as the issue is framed or couched on appeal, it's essentially phrased thusly. Had Oregon State responded to the prior rape and taken corrective action, Ms. Samuelson would not have been deprived of access to OSU's educational opportunities and benefits. I mean, it's a different way of saying that had Oregon State not had, I guess, she would not have been actually raped in 1999, had Oregon State not had extreme indifference to a prior rape that occurred in 1998. I guess I might read it a little differently, but I don't know if it makes a difference. And that is, I interpret it to mean that as a consequence of the rape, number one, the earlier rape, they would have learned some things and modified their procedures in dealing with victims. And although she's not faulting the counseling, she's faulting that she couldn't go forward, given her emotional status, she couldn't go forward and enjoy the university. So I viewed that as her claiming that somehow the university should have done more after the fact to make her environment plausible or reasonable so she could proceed, although it may suffer from the same disconnect between her claims and what she wants. Well, if the claim is that the university's post-assault response was inadequate, then it's clearly time-barred because she was fully aware. Correct, because she knew as of at least the period surrounding her inability to continue school, she knew what they offered and what was possible and what their procedures were, correct? Correct. That would be at the latest in the year 2000, when she withdrew from the university. So then she, I think, couches her claim in that, well, once she found out, unless Samuelson finds out about the Tracy assault, now she knows that the university had notice of one other off-campus assault. That's, I think, her claim. All right. And then I don't know quite what that means. I still haven't quite heard from her counsel how that connects up to her claim, but let's assume it does. Then, I mean, where would that leave us? So, Your Honor, the way I understand it, and that is that the university, the allegation is the university should have taken more concrete steps after it found out about the Tracy rape. Correct. So what the university should have done is implemented student training programs, had more robust policies, taken a number of measures that would have prevented, and this is the way it's alleged in the complaint, too. It's at paragraph 29. But for their deliberate indifference, or because of their deliberate indifference, she was subjected to extreme sexual harassment in the form of rape. So it's essentially that the university was responsible, because of their deliberate indifference for the rape that she suffered in 1999. And yet, when I asked her about that, this is why I'm having some trouble with the claim, she's disclaiming the university's responsibility for the rape, but rather for creating an environment where she couldn't continue in school. I mean, that's what her ultimate claim is, I think. She claims somehow it's, I thought she disclaimed the injury from the rape itself happening, but rather that she couldn't, in light of the school environment, continue there. Well, then that sounds like the post-assault conduct. Well, that's what I thought. But then that's been disavowed. So, I mean, it's sort of, I feel like it's a bit of a moving target. But to the extent that there's an allegation about post-assault conduct, I think as the panel has noted, that would be without question barred by the statute of limitations. So let's say then her claim is, she says the notice that the university is on once the Tracy events occur. So once the university is on notice of that, they fail to implement policies that would have prevented her rape, but then that's not consistent with her claim that she's not claiming the university being responsible for her rape. So your view of the claim is that she's claiming, as a result of the notice, the university should have done more about off-campus events or off-campus actors? Well, just looking back at the complaint, it says, this is paragraph 29 of the complaint, as a result of OSU's deliberate indifference, plaintiff was subjected to extreme sexual harassment in the form of rape by Carlisle's cousin in the same apartment where Carlisle and three other men had sexually assaulted Ms. Tracy more than a year before. So it sounds like, as pleaded, it's really the university's alleged deliberate indifference led to the rape. But then that's, I thought that was disclaimed. What was disclaimed was... The rape, any injury from the rape itself. Maybe that paragraph says that's not the case. Well, I'm looking, I'm reading from the reply brief on appeal. This is at pages two and three. Her Title IX claim is based upon OSU's deliberate indifference to its actual knowledge of Tracy's report of rape that preceded Samuelson's report of rape, its actual knowledge of OSU's football program's hostile culture towards women, and its actual knowledge of the custom or practice of ignoring or suppressing reports about sexual misconduct by OSU's football players towards females. Then it goes on to say, OSU's deliberate indifference to Samuelson's report of rape is alleged as a consequence of OSU's deliberate indifference to Tracy's report of rape a year earlier. So that's not... When did the particulars of the Tracy rape become public knowledge? Well, the allegation in the complaint is that it was 2014 that it became, that Ms. Samuelson learned of the... There's an article in the Oregonian that was published, and that's when Ms. Samuelson learned of the Tracy rape. It wasn't public at the time that it happened? I thought it was public. Not according to... Confining to the contours of the complaint, it was not made public until 2014. But there were disciplinary, albeit not very significant, action taken against the player, correct? Players. Correct. Again, according to the allegations of the complaint. But I think the point is, Your Honor, is that if the claim is that there was deliberate indifference in connection with the handling and the aftermath of Ms. Tracy's rape, then that would... That means you'd have to look at, did the university then, under the Davis test, did it exert, have substantial control over the attacker and the circumstances in which the attack occurred? That's the only way they can be held liable. And if you look at the Davis case, which is about as far as the Supreme Court has gone, that was a case where it was a fifth-grade student had sexually harassed another fifth-grade student. And so it was a known case of harassment, one student versus another. And the allegation was that the school did not do anything to stop it. And so that was an extension of Title IX liability. That's as far as it's gone before the U.S. Supreme Court. I think that the Simpson case out of the Tenth Circuit says it distinguishes Davis and said, well, it's a little bit different and we've got a different context because it was not, you didn't have like a known assailant, but you had a university program that was sponsored, encouraged, and supported by the university, the recruiting program, where recruits were to be shown a good time. And so I think the holding of the Tenth Circuit was it became like official policy or custom of the University of Colorado. Rather than helping to show that there was a claim stated in this case, it actually shows the deficiencies of the claim here because you have no official policy or custom, no sanctioned event. It was an off-campus party unknown to OSU, and the attack was at the hands of a non-OSU student. So not only did the university not exert substantial control, it exerted no control whatsoever. So besides the lack of control, the lack of the Title IX violation on the merits you have, then the statute of limitations, no matter how you slice it, bars the claim. It's the injury that is the trigger and starts the clock for the statute of limitations, not the later knowledge. We cited the Tversky case in our brief that said it's learning. I think the plaintiff there had said although they had actual knowledge of injury, again, it was a sexual assault, their argument that they did not learn of deliberate indifference until later. Kennedy. But she claims the injury is not the sexual assault per se, right? Isn't that? I mean, no, that's the basis on which the plaintiff is trying to distinguish in this case. You know, it's a loss of educational opportunity. But the injury is what? Is that not a difference to you? I'm having a hard time parsing the difference between those two because I think the injury was, certainly was the rape and then the consequences of that injury were the inability to follow through with their education. But, again, if that's. So the case you were just citing, which is it's the injury, not the notice of deliberate indifference, was which case? The Tversky case cited in our brief. Yes. And it said the court said their argument that they did not learn of deliberate indifference confuses knowledge of the existence of a legal right with knowledge of injury. And it's knowledge of injury that triggers the running of the statute of limitations. And before my time runs out, I'd just like to make one more point, and that is in dismissing the complaint, the trial judge found that there is no, any amendment would be futile. So the court properly dismissed the case with prejudice. And we would ask that the court here affirm the judgment of the district court. So unless Your Honors have any more questions, I will cede the floor. Thank you. Thank you. I believe, Your Honor, my rebuttal time was taken up, if I may. All right. I'll focus on the concern. A minute for additional, for rebuttal, because you already were kind of in the hole, so to speak, in the timing. Absolutely, Your Honor. The focus in the Title IX language isn't on rape. The focus is on participation in, denied the benefits of, or subjected to discrimination under any education program. So the focus there is on being deprived of the educational opportunity. That's why we focus on that injury when we talk about OSU. Second to that, when we talk about the two different allegations, in the SSV Alexander case, there was an argument, Congress did not intend to eliminate only acts of sexual discrimination in educational settings, but also intended to require the ameliorization and minimization of the effects of the discriminatory acts when they do occur. That's why in our case we pleaded two types of harm. We've got, in paragraph 29, as you had that back and forth, responsibility for the rape. And in paragraph 31, we talk about the responsibility of the university for not ameliorating those effects. And then in paragraph 22 is where we address the timeliness associated with the discovery of the university as a separate harm. And then finally in paragraph 26, we talk about the measures that would have made a difference. Thank you. Thank you. Thank both counsel for your arguments this morning. Samuelson v. Oregon State is submitted. Ramirez v. Berryhill is submitted on the briefs and we're adjourned for the morning. Thank you.
judges: Tashima, McKeown, Paez